**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**TOBY PAGE**                                    **CIVIL ACTION**

**VERSUS**                                       **NO. 10-1724**

**STEVE RADER, WARDEN**                          **SECTION "I"(6)**

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.   For the following reasons, it is hereby recommended that the instant petition be **DISMISSED WITH PREJUDICE**.

## PROCEDURAL HISTORY[1]

On May 4, 2000, petitioner, Toby Page, was charged by grand jury indictment with the second degree murder of Philip "Bo" Bankston, the attempted second degree murder of David Page, and with illegal use of a weapon. Petitioner pled not guilty and waived his right to a trial by jury. Prior to trial, petitioner filed a motion to suppress a recorded inculpatory statement given after his arrest. The trial judge denied the motion. Following a bench trial in the Twenty-First Judicial District Court for the Parish of Tangipahoa, petitioner, on October 16, 2000, was found guilty of the responsive offense of manslaughter in connection with the death of Bo Bankston, was found guilty of illegal use of a weapon, and was acquitted on the charge of attempted second degree murder of David Page. On February 11, 2002, petitioner was sentenced to serve thirty years at hard labor for the manslaughter conviction and ten years at hard labor for the illegal use of a weapon conviction, with the sentences to run consecutively and with credit for all time served.

On April 2, 2004, the Louisiana First Circuit Court of Appeal affirmed petitioner's convictions and sentences. *State v. Page*, 870 So.2d 643 (Table), No. 2003-KA-1181 (La. App. 1 Cir. 2004 (unpublished opinion). On November 15, 2004, the Louisiana Supreme Court denied petitioner's writ application. *State v. Page*, 887 So.2d 474 (La. 2004).

---

[1]A portion of the procedural history was taken from the Louisiana First Circuit Court of Appeal's opinion, *State v. Page*, 870 So.2d 643 (Table), No. 2003-KA-1181 (La. App. 1 Cir. 2004) (unpublished opinion). A copy of the state appellate court's unpublished opinion is contained in the State rec., vol. 4 of 4.

Following the conclusion of his direct appeal proceedings, petitioner sought post-conviction relief.  Petitioner's effort in this regard culminated on April 30, 2010, when the Louisiana Supreme Court denied him relief.  *State ex rel. Page v. State*, 34 So.2d 285 (La. 2010).

On May 28, 2010, petitioner tendered the instant federal habeas corpus application for filing claiming that the evidence was insufficient to support his convictions for manslaughter and illegal use of a weapon and that he received ineffective assistance of counsel.  In its response, the State concedes that petitioner's habeas application is timely and that petitioner has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).  Accordingly, the court shall proceed to address the merits of petitioner's claims following its review of the pertinent facts and applicable standard of review.

## FACTS[2]

On the night of April 22, 2000, petitioner drove to the Ponchatoula Sonic restaurant, where he saw his mother in the company of his uncle, David Page.  Petitioner and David Page became embroiled in a verbal exchange that escalated into a physical altercation, with petitioner ending up on the ground.  Rather than leaving the scene after the fight,

---

[2]The facts are taken from the Louisiana First Circuit Court of Appeal's opinion, *State v. Page*, 870 So.2d 643 (Table), No. 2003-KA-1181 (La. App. 1 Cir. 2004) (unpublished opinion).

petitioner retrieved a pistol from his truck and fired numerous shots toward his uncle in an apparent attempt to hit or scare him.  During the barrage of gunfire, David Page was struck in the hand; another Sonic patron, Bo Bankston, was mortally wounded when he was struck in the head as he sat in his car with his wife; and a patron of a video store located adjacent to the Sonic restaurant, Robert Shelton, was struck by a bullet in his hand while sitting in his car.  After the shootings, petitioner quickly drove his truck out of the Sonic parking lot.

Ponchatoula Police Department Patrol Officer John Cieutat, III was dispatched to the site of a reported shooting at the Sonic restaurant at approximately 10:00 p.m.  When he arrived at the scene, bystanders pointed to a white truck exiting the parking lot.  Officer Cieutat caught up to a white Nissan truck and, with the assistance of another officer, got the driver to stop in a nearby shopping center parking lot.  The two officers, with weapons drawn, ordered the driver, petitioner, to exit the vehicle, and he did so cooperatively.  When the officers asked where petitioner had come from, he replied, "I'm the one from Sonic." The officers immediately placed petitioner under arrest, handcuffed him, place him in a squad car, and read him his *Miranda* rights.

Petitioner remained alone in the squad car for about fifty minutes while officers secured the scene, photographed the truck, and summoned detectives to the location for further investigation.  Petitioner was then transported to the police station, where he was handcuffed to a desk and was orally advised of his *Miranda* rights before executing a written

4

waiver of rights form.  Petitioner orally assured Officer Cieutat that he understood his rights, and Officer Cieutat testified that no threats or promises were used to induce petitioner to execute the waiver or to make a statement.  During this period, petitioner appeared frightened but cooperative, and he did not request the assistance of an attorney or indicate that he did not wish to make a statement.  No other officers were in contact with petitioner, outside Officer Cieutat's presence, until a detective arrived to take over the investigation.

Ponchatoula Police Detective Raymond Mauterer was called to supervise the handling of the Sonic crime scene as well as the nearby location where petitioner was arrested.  This process took several hours.  When he returned to the station, Detective Mauterer advised petitioner again of his *Miranda* rights and petitioner executed a second waiver of rights form.  Petitioner orally indicated that he understood his rights and that he was willing to give a statement.  Detective Mauterer then interviewed petitioner and took a recorded statement from him at approximately 3:00 a.m.  During the interview, petitioner became extremely upset, crying and vomiting, after he was advised that one of the shooting victims had died.  Petitioner nevertheless indicated that he wanted to make a statement, admitting that he had retrieved a weapon from his vehicle and had attempted to shoot his uncle, David Page, in the legs.  At no time was petitioner threatened or promised anything to induce him to give the recorded statement.  Moreover, at no time did he ask to speak to an attorney.  A transcript of the recorded statement was introduced into evidence at a hearing

on petitioner's motion to suppress and at the trial.  Detective Mauterer identified petitioner

in court as the suspect from whom he took the tape-recorded statement.  Petitioner did not

call any witnesses in support of his motion to suppress his confession.  At the conclusion of

the hearing, the trial judge denied petitioner's motion to suppress.

At the conclusion of petitioner's trial, he was found guilty of manslaughter in

connection with Bo Bankston's death, was found guilty of the illegal use of a firearm, and

was acquitted of the offense of attempted second degree murder of David Page.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions

of fact, questions of law, and mixed questions of law and fact.  Provided that the state court

adjudicated the claim on the merits, pure questions of law and mixed questions of law and

fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).

*Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court

must defer to the state court's decision unless it "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court has

noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citations

omitted).

As to questions of fact, factual findings are presumed to be correct and a

federal court will give deference to the state court's decision unless it "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."  28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## ANALYSIS

### Insufficient Evidence to Support Convictions for Manslaughter and Illegal Use of a Weapon

A review of the pertinent grand jury indictment reflects that petitioner was

charged, in count one, with a violation of "Louisiana Revised Statute, 14:30.1, in that he did

commit second degree murder of Philip "Bo" Bankston"; in count two with a violation of "Louisiana Revised Statute , 14:27 and 14:30.1, in that he did attempt to commit second degree murder of David Page"; and, in count three with a violation of "Louisiana Revised Statute, 14:94 F, in that he did commit the crime of illegal use of weapons by discharging a firearm while committing or attempting to commit a crime of violence."[3]  Petitioner argues that because he was acquitted of count two, attempted second degree murder of David Page, there was insufficient evidence to support his manslaughter and illegal weapon convictions.

In support of the above argument, in connection with his manslaughter conviction, petitioner points to the following statement by the district attorney at the close of trial:

> [W]ith respect to the murder of Bo Bankston, the State obviously does not
> content [sic] that Mr. Page had the specific intent to kill Mr. Bankston.  The
> testimony obviously did not show that.  However, the State does urge the
> recognition of the doctrine of transfer of intent in this case which states that if
> the offender had the intent to kill someone and intentionally kills someone in
> violation of the second degree murder statute even though he did not kill the
> person he intended to if he in fact killed someone else that constitutes second
> degree murder under the doctrine of transferred intent....[4]

---

[3]A copy of the May 4, 2000 grand jury indictment charging petitioner with the above-specified crimes is contained in the State rec., vol. 2 of 4.

[4]Rec. doc. 1, "Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus", p. 3.  A copy of the transcript of the pertinent argument is attached to petitioner's habeas application as Exhibit E, pp.165-166.

Based upon the above language, petitioner argues that since he was acquitted on the charge of attempted second degree murder of David Page, any intent he had to murder David Page could not be transferred in connection with the murder of Bo Bankston; therefore, he should have been acquitted in connection with the death of Bo Bankston rather than convicted of manslaughter.

Petitioner also points to the following statements made by the trial court in rendering his decision:

> On the count of attempted murder of Mr. David Page the law is that for an attempted second degree murder charge or an attempted manslaughter there must be a specific intent to kill not to inflict great bodily harm but specifically to kill....  And in finding that there was no or at least having reasonable doubt whether there was a specific intent to kill I do not think I can find Mr. Page guilty on that charge.[5]

Petitioner argues that the above language "solidifies the fact that there could be no transfer of intent where from the court's own admission, no intent exists."[6]

Petitioner points to his indictment, noting that he was charged with committing the crime of second degree murder of Bo Bankston.  Petitioner submits that he was put on notice with regard to this crime and prepared to defend himself against a charge of second degree murder, not manslaughter.  However, despite this fact, he was unconstitutionally

---

[5]Rec. doc. 1, "Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus", p. 4; see also Exhibit E, p. 184.

[6]Rec. doc. 1, "Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus", p. 4.

convicted "of a totally separate and distinct crime", i.e. manslaughter, "which did not even contain the same elements as the crime initially charged", i.e., second degree murder, and is "not responsive to the crime charged."[7]

The Louisiana First Circuit Court of Appeal soundly rejected petitioner's insufficiency of evidence claim and related argument that he was unconstitutionally convicted of the "totally separate and distinct crime" of manslaughter. First, in addressing this matter, the court set forth the applicable law enunciated by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that "[t]he standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt." *Page*, No. 2003-KA-1181, p. 8. The court then reasoned:

> In this case, the trial judge found [petitioner] guilty of manslaughter pursuant to LSA-R.S. 14:31A(2)(a), which defines manslaughter as a homicide committed, without any intent to cause death or great bodily harm, when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1 of the Criminal Code, or of any intentional misdemeanor directly affecting the person. The overwhelming evidence at trial is that [petitioner] intentionally discharged his weapon repeatedly in the general direction of his uncle, David Page. Regrettably, an innocent restaurant patron was fatally wounded. Although the trial judge

---

[7]*See* Exhibit A, p. 6, attached to petitioner's habeas application.

indicated doubt that [petitioner] intended to kill his uncle, he was persuaded that defendant either intended to shoot his uncle or to frighten and intimidate him. [Petitioner] was in the course of committing, at the very least, an aggravated assault, an intentional misdemeanor directly affecting the person. Assault is an attempt to commit a battery, **or the intentional placing of another in reasonable apprehension of receiving a battery.** LSA-R.S. 14:36. Aggravated assault is an assault committed with a dangerous weapon. LSA-R.S. 14:37A. The definition of battery includes the intentional use of force or violence upon the person of another. LSA-R.S.14:33. [Petitioner] admitted that he was trying to shoot at his uncle's legs. Defendant's conduct clearly constituted manslaughter pursuant to LSA-R.S. 14:31A(2)(a), because the killing of Bo Bankston occurred during the commission of an intentional misdemeanor directly affecting the person....

Where there is evidence that defendant had specific intent to commit an intentional misdemeanor and a death results in the course of commission of the offense, the evidence is sufficient to support a manslaughter conviction, even if the particular injury caused was accidental.... Manslaughter is a legislatively provided responsive offense to second-degree murder. LSA-C.Cr.P. art. 814A(3). After a thorough review of the record, we are satisfied that the state adduced sufficient evidence to prove beyond a reasonable doubt every element of the crime of manslaughter....

*Page*, No. 2003-KA-1181, pp. 9-10 (emphasis original) (citations omitted).

This court finds that the above reasoning does not represent an unreasonable application of the law enunciated in *Jackson*, *supra*, to the facts of this case. Thus, petitioner's claim that he was unlawfully convicted of manslaughter in connection with the death of Bo Bankston is without merit.

In connection with his claim that there was insufficient evidence to support his illegal use of weapon conviction, petitioner relies on an affidavit from Detective Raymond Mauterer which was submitted for purposes of determining whether or not there was

11

probable cause to hold petitioner following his arrest.  Detective Mauterer attested that petitioner "did of his own free will commit the offense of illegal use of weapons or dangerous instrumentalities by discharging a firearm ... in the parking lot of Sonic Drive Inn ... while attempting to commit a homicide on a David Page (uncle).  While attempting to commit the homicide on Mr. David Page, he struck Mr. Robert L. Shelton, in the hand, and Mr. Philip Bankston, in the left temple (head).  This is in violation of Louisiana Criminal Code RS 14:94F."[8]

Based upon the above, petitioner argues that he could not lawfully be found guilty of violating LSA-R.S.14:94(F) because he was acquitted of attempting to commit a homicide on David Page.  According to petitioner, attempting to commit a homicide on David Page was an "essential element" of the crime of illegal use of a weapon lodged against him and because he was acquitted of attempting to commit a homicide on David Page, he could not constitutionally be convicted of illegal use of a weapon in violation of LSA-R.S. 14:94(F).[9]

In rejecting the above argument, the Louisiana First Circuit Court of Appeal observed that LSA-R.S. 14:94F provides:

_____

[8]A copy of Detective Mauterer's affidavit is attached to petitioner's habeas application as Exhibit E-1.

[9]*See* Exhibit A, p. 7, attached to petitioner's habeas application.

> **Whoever commits the crime** of illegal use of weapons or dangerous instrumentalities **by discharging a firearm while committing**, attempting to commit, conspiring to commit or soliciting, coercing, or intimidating another person to commit **a crime of violence** or violation of the Uniform Controlled Dangerous Substances Law, shall be imprisoned at hard labor for not less then ten years nor more than twenty years, without benefit of parole, probation, or suspension of sentence.  (Emphasis added).

*Page*, No. 2003-KA-1181, p. 11.  The court then reasoned that because it is clear that petitioner "discharged his firearm while committing manslaughter, a crime of violence defined in LSA-R.S. 14:2(13)(d) ... the evidence was sufficient to support [petitioner's] conviction for illegal use of a weapon" despite the fact that petitioner was acquitted on the charge of attempted second degree murder of David Page.  *Id.*

Once again, this court finds that the above reasoning does not represent an unreasonable application of the law enunciated in *Jackson*, *supra*, to the facts of this case. Accordingly, petitioner's claim is without merit.

**Ineffective Assistance of Counsel**

Petitioner argues that trial counsel was ineffective for failing to file a proper post-trial motion seeking relief based upon the fact that he was unlawfully convicted on the charges of manslaughter and illegal use of a weapon.[10]   In addressing petitioner's

---

[10]This claim is set forth in Exhibit A, p. 11, attached to petitioner's habeas application.

ineffectiveness claim, the Louisiana First Circuit Court of Appeal examined the applicable law.

> A claim of ineffectiveness of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). [Petitioner] must first show that the attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment.  Second, defendant must show that this deficiency prejudiced the outcome of his case.

*Page*, No. 2003-KA-1181, p. 14.

Thereafter, the court reasoned: "We have already concluded that the evidence was sufficient to support both of [petitioner's] convictions.  Thus, we have no basis to conclude that defendant was prejudiced by the failure to file this motion."  *Id.* at 19.

Under federal law, as under state law, an attorney's performance is not rendered ineffective due to his failure to raise meritless objections or arguments.  *See, e.g., United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."). *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions.").  Because there was clearly sufficient evidence to support petitioner's

14

manslaughter and illegal use of a weapon convictions, counsel's failure to raise post-trial motions challenging the legitimacy of said convictions based upon a lack of evidence does not constitute ineffectiveness.

Petitioner also argues that appellate counsel was ineffective in failing to raise on appeal the argument that he was unlawfully convicted of manslaughter and illegal use of a weapon.  To prove ineffectiveness on the part of appellate counsel, a petitioner must satisfy the two-prong test enunciated in *Strickland*.  *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir.), *cert. denied*, 541 U.S. 1087, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004) (citations omitted) ("The familiar *Strickland* framework applies to a prisoner's claim that his appellate counsel was ineffective for failing to raise a certain issue on appeal.").  Petitioner has clearly failed to satisfy his burden that he was prejudiced by appellate counsel's failure to raise the argument as the Louisiana First Circuit, as discussed above, fully addressed the issue pursuant to petitioner's pro se assignment of error, finding that sufficient evidence existed to support both of petitioner's convictions.  Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. §636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[11]

New Orleans, Louisiana, this __14th__ day of ____March_____, 2011.

LOUIS MOORE, JR.

United States Magistrate Judge

---

[11]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.